IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM DANIELCZYK, Jr., & | ) 1:11cr85 (JCC) |
| EUGENE BIAGI, | ) |
| | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant William J. Danielczyk, Jr.'s Motion to Produce Certain Exculpatory Evidence. [Dkt. 30.] For the following reasons, the Court will grant in part this Motion.

## I. Background

On February 16, 2011, a grand jury sitting in the Eastern District of Virginia returned a seven-count indictment against William P. Danielczyk, Jr., and Eugene R. Biagi (together, "Defendants"), charging them with illegally soliciting and reimbursing contributions to Hillary Clinton's 2006 Senate and 2008 Presidential Campaigns. [Dkt. 1.] Count 1 charged conspiracy in violation of 18 U.S.C. § 371, Counts 2 and 3 charged making campaign contributions in connection with another in violation of 2 U.S.C. § 441f and 18 U.S.C. § 2, Count

1

4 charged corporate contributions in violation of 2 U.S.C. § 441b and 18 U.S.C. § 2, Count 5 charged obstruction of justice in violation of 18 U.S.C. §§ 1519, 2, and Counts 6 and 7 charged causing false statements in violation of 18 U.S.C. §§ 1001(a)(2), 2.  Joint trial is set for July 6, 2011.

Mr. Danielczyk now moves the Court to compel the Government to search certain files for possibly exculpatory information.  He filed his motion and memorandum in support on April 6, 2011 [Dkts. 30, 31 ("Mot.")], the Government responded in opposition on April 19, 2011 [Dkt. 38 ("Opp.")], and he filed a reply brief on April 25, 2011 [Dkt. 48 ("Reply")].  Mr. Biagi later joined Mr. Danielczyk's motion.

The Motion to Compel is before the Court.

## II. Analysis

At issue here is the scope of the Government's duty (if any) to search the files of relevant Executive-Branch agencies for materials that are either exculpatory under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), or "material to preparing the defense" under Federal Rule of Criminal Procedure 16.  Defendants argue that the Government should be required to search Clinton-campaign-related files of other agencies, such as the Federal Election Commission ("FEC"), for materials that might tend to negate certain elements of the charges in this case.

There is no general Constitutional right to discovery in a criminal case. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987). *Brady* announced the requirement, under the Due Process Clause, that the Government must disclose "evidence favorable to an accused . . . where that evidence is material either to guilt or to punishment." 373 U.S. at 87. "*Brady* requests cannot be used as discovery devices." *United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010). *Brady* does not require that any materials be turned over on the chance that they might be exculpatory. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). Rather, evidence is material and must be disclosed where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

That standard differs somewhat from this Circuit's materiality standard under Rule 16. That rule requires that the Government "permit the defendant to inspect and to copy or photograph" items that are within the Government's possession, custody, or control and that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). It thus provides for

3

much broader discovery than that constitutionally required under *Brady*. But, in this Circuit, materials requested before trial are only "material" where there is "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 F.3d at 621 (citing *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)).

With respect to Counts Two, Three, Six, and Seven, as set forth in this Court's Memorandum Opinion on the motions to dismiss, the applicable *mens rea* in this case follows from *United States v. Bryan*, 524 U.S. 184 (1998): the defendant must have committed the *actus reus* while believing his actions to be unlawful, though not necessarily with specific knowledge of the law. Thus, if information was communicated to Defendants suggesting that their behavior was not unlawful, that information would be material as negating the requisite *mens rea*. That said, as this Court is not applying the strictest level of *mens rea* from *Ratzlaf v. United States*, 510 U.S. 135 (1994), and *Cheek v. United States*, 498 U.S. 192 (1991), requiring specific knowledge of the law being violated, the opinions of others regarding the statute's ambiguity are not material to the Defendants' state of mind.

Having found that evidence bearing on Defendants' *subjective* view of the legality of their actions is material,

4

the question remains what affirmative duty the prosecution team has to uncover such information from the files of other government agencies.

The Supreme Court addressed this to a degree in *Kyles v. Whitley*. Writing that "the prosecution . . . alone can know what [evidence] is undisclosed" and therefore what evidence may be material, the Court stated that "this in turn means that the individual prosecutor has a *duty to learn* of any favorable evidence *known* to the others acting on the government's behalf in the case, including the police." 514 U.S. at 438 (emphasis added). Read literally, this at least requires prosecutors to *ask* supporting government officials whether they *know* of favorable evidence. But does it also require an affirmative search for such evidence?

In every circuit to consider this question--the Fourth Circuit not being one--the answer has been "yes." Probably the most cited case on point is *United States v. Brooks*, in which the D.C. Circuit found a duty to search for a particular file where the file was linked to the case, where it could easily retrieved, and where the local police department was "closely aligned with the prosecution." 966 F.2d 1500, 1503 (D.C. Cir. 1992). Noting that prosecutors have their own incentive to search related files to avoid surprises at trial, the Court ruled nonetheless that the affirmative duty to search "stem[s]

5

primarily from a sense that an inaccurate conviction based on government failure to turn over an easily turned rock is essentially as offensive as one based on government non-disclosure." *Id.* at 1502-03.

A number of circuits have agreed, and none appear to have disagreed. *See, e.g.*, *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) ("The duty to search discourages the government from intentionally keeping itself ignorant of information useful to the defense. However, where the government has diligently searched, no *Brady* violation will be found.") (citing *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984); *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994)); *United States v. Osorio*, 929 F.2d 753, 761 (1st Cir. 1991) ("The prosecutor charged with discovery obligations cannot avoid finding out what 'the government' knows simply by declining to make reasonable inquiry of those in a position to have the relevant knowledge."); *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir. 1991) (stating that it is inexcusable not to disclose a witness's criminal background where readily available to prosecutors); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) ("If disclosure were excused in instances where the prosecution had not sought out information readily available to it, we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government.").

This position was stated at length in *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005), a case where the defendant was charged with making false statements in obtaining the GSA's permission to attend a trip with the lobbyist Jack Abramoff. *Id.* at 13. Citing *Kyles* and *Brooks*, the district court stated that prosecutors must "cause files to be searched that are not only maintained by the prosecutor's or investigative agency's office, but also by other branches of government 'closely aligned with the prosecution.'" *Id.* at 17.

As to the scope of the search, where the items requested were emails concerning the defendant's trip potentially within GSA email accounts, the Court found it "insufficient for the Justice Department merely to state that while documents are not currently in its (or the FBI's) possession it is continuing to make inquires of GSA employees about e-mails . . . during the course of witness interviews." *Id.* at 19. Instead, the court ordered the DOJ to make an immediate formal written request to the GSA demanding "that [it] conduct a thorough search for and produce to the Justice Department all [relevant] e-mails-including archived e-mails on hard drives-and correspondence sent to or from GSA officials relating to [the matters at issue], as any other documents relating to the same." *Id.* The prosecutors could then

7

determine what evidence needed to be disclosed under Rule 16 or *Brady*. *Id.*

The Government contends that Defendants' proper route towards obtaining their sought information is by subpoenaing it from the relevant agencies. (Opp. at 9-10). The D.C. Circuit addressed that contention directly, finding it "unpersuasive," in *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 897 (D.C. Cir. 1999). The Court explained, "the prosecutor is responsible for any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* (quoting *Strickler v. Greene,* 527 U.S. 263, 275 n.12 (1999)). Thus, the appropriate way to obtain *Brady* material "was to make a *Brady* request of the prosecutor." *Id.* Moreover, though the Government cites cases holding that a defendant has access to information if he can subpoena it from an "independent" or "neutral" source, the Government surely does not consider itself neutral, nor should it be.

This Court thus agrees with the majority of other courts that in certain cases, including this one, the implementation of *Brady* and its progeny, including *Kyles*, may require that the prosecution team review readily available information held by closely aligned executive branch agencies. As for which agencies need be searched here, Defendant seeks to

8

search files of the DOJ (including other Clinton-related prosecutions) and the FEC. (Mot. at 3.)

This Court agrees that the DOJ is a "closely aligned" executive branch agency and that its relevant files should be searched. As for the FEC files, the Government represents that the FEC has not contributed to this case in any way, (Opp. at 8), and therefore this Court finds that the FEC was not "closely aligned" with the prosecution in this case and its files need not be searched.

As to the object of the search, because as explained above the Government must prove that Defendants intended to act unlawfully, the Government must search in good faith for evidence as to what the Clinton campaign communicated, or was likely to have communicated, to defendants, regarding reimbursements. For instance, such evidence could include Clinton campaign communications to volunteer donors, especially to Defendants, discussing reimbursements.[1] But it would not include, for example, internal Clinton or Government memoranda questioning the interpretation of the relevant statutes, because

---

[1] Defendants also seek evidence of wrongdoing by the Clinton campaigns, arguing that such evidence would negate his alleged role as the "cause" of contributions made in the name of another (under Counts Two and Three) or of false statements (under Counts Six and Seven). Implicit in his claim is the notion that only the *proximate* cause of a contribution in the name of another, or of a false statement, is liable. But Defendants present no support for this premise; and this Court knows of no such limitation under the relevant statutes.

9

the Government need not prove specific awareness of the law's commands in this case.

### IV. Conclusion

For these reasons, the Court will grant in part the motion, and will require that the Government search Department of Justice files, in good faith, for evidence as to what the Clinton campaign communicated, or was likely to have communicated, to Defendants, regarding reimbursements, as set forth above.

|  |  |
|---|---|
| May 26, 2011<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |