IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES,                     )
                                   )
            v.                     )
                                   )
WILLIAM DANIELCZYK, Jr., &         )   1:11cr85 (JCC)
EUGENE BIAGI,                      )
                                   )
      Defendants.                  )


## M E M O R A N D U M   O P I N I O N

The issue before the Court is whether, in the wake of
*Citizens United v. FEC*, 130 S. Ct. 876 (2010), Defendants can be
charged with directing corporate money to a political campaign.
Finding that *Citizens United* precludes such charges, on May 26,
2011, this Court dismissed Count Four and Paragraph 10(b) of the
Indictment.  [Dkts. 60, 62.]  Following that decision, because
this Court "owes no deference to itself"[1] and can correct its own
opinions, this Court requested additional briefing and argument
as to whether, in light of *FEC v. Beaumont*, 539 U.S. 146 (2003),
and *Agostini v. Felton*, 521 U.S. 203 (1997), this Court should
reconsider its ruling.  [Dkt. 63.]  The Government
contemporaneously moved for reconsideration on the same grounds.
[Dkt. 68.]

---

[1] *Vosdingh v. Qwest Dex, Inc.*, No. Civ. 03-4284, 2005 WL 1323007, at *1 (D. Minn. Jun. 2, 2005).

1

Having considered the positions of parties and amici, this Court will deny the Government's motion except to clarify that 2 U.S.C. § 441b(a)'s flat ban on direct corporate contributions to political campaigns is unconstitutional as applied to the circumstances *of this case*, as opposed to being unconstitutional as applied to all corporate donations.[2]

## I. Analysis

The Government alleges that Mr. Danielczyk, as Chairman of Galen Capital Group, LLC, and Galen Capital Corporation (together, "Galen"), and Mr. Biagi, as a Galen executive, subverted federal campaign contribution laws by reimbursing their employees' costs of attending two fundraisers Mr. Danielczyk co-hosted for Hillary Clinton's 2006 Senate and 2008 Presidential campaigns. Count Four of the Indictment [Dkt. 1] charges Defendants with directing contributions of corporate money to Hillary Clinton's 2008 Presidential Campaign in violation of 2 U.S.C. § 441b(a) of the Federal Election Campaign Act of 1971 ("FECA"), which prohibits direct corporate contributions to federal campaigns.[3]

Defendants claim that, under the logic of *Citizens United*, the corporate direct donations ban violates the First

---

[2] Although this Court is denying the Government's motion, to the extent there is any inconsistency between this Memorandum Opinion and Part C of the Court's May 26, 2010 Memorandum Opinion [Dkt. 60], this Opinion supersedes Part C.

[3] This alleged corporate donation is also listed in Count One, Paragraph 10(b), as an object of Defendants' alleged conspiracy under 18 U.S.C. § 371.

Amendment and that Count Four and Paragraph 10(b) must therefore be dismissed. The Government responds that *Citizens United's* ruling is limited to independent political expenditures, as opposed to direct campaign contributions, and that the constitutionality of the corporate direct donations ban is a settled question under *FEC v. Beaumont*, 539 U.S. 146 (2003).

To review, *Citizens United* involved a nonprofit corporation that produced a highly critical film about Hillary Clinton during her 2008 presidential campaign. Because the film was in effect "a feature-length narrative advertisement that urges viewers to vote against Senator Clinton," it was subject to 2 U.S.C. § 441b's provision barring corporations or unions from making *independent expenditures* as defined by 2 U.S.C. § 431(17) or expenditures for "electioneering communications" as defined by 2 U.S.C. § 431(f)(3). The Supreme Court held the ban unconstitutional because it found that independent expenditures do not trigger the government's interest in preventing *quid pro quo* corruption or its appearance.

This ruling stemmed largely from the Supreme Court's opinions in *Buckley v. Valeo*, 424 U.S. 1 (1976), and *First National Bank of Boston v. Bellotti*, 435 U.S. 784 (1978). *Buckley* involved FECA's limits on *direct* campaign contributions and on *independent* election-related expenditures. Dealing first with direct contribution limits, the Court found a "sufficiently

important" government interest in "the prevention of corruption and the appearance of corruption" that justified limiting the amount a person could contribute to a federal campaign. *Id.* at 25. The Court was concerned that large direct contributions, *i.e.*, those *above* the limits, could be used "to secure a political *quid pro quo*." *Id.* But the Court found less *quid pro quo* risk for independent expenditure limits "because [of] the absence of prearrangement and coordination" between the donor and any specific candidate. *Id.* at 47-48.

Importantly, because of the strong government interest in preventing *quid pro quo* corruption or its appearance, *Buckley* permitted FECA's limits on direct contributions even though those limits implicate fundamental First Amendment interests. *Id.* at 23. It follows that contributions *within FECA's limits* do not create a risk of *quid pro quo* corruption or its appearance--indeed, that is the point of the limits. *Id.* at 25.

Two years after *Buckley*, the Supreme Court in *Bellotti* considered a Massachusetts ban on corporate contributions or expenditures to influence the outcome of any state referendum. On one hand, the Court explicitly declined to rule on the constitutionality of the ban. *Id.* at 787 n.26. On the other hand, the Court stated that the identity of a corporation as "speaker," especially in the context of political speech, is of

4

no consequence to the First Amendment protection its speech is afforded. *Id.* at 784-85.

The Supreme Court seized on the latter point in *Citizens United*, linking it with *Buckley* to strike down a ban on independent corporate expenditures. The Court's logic was that, because *Buckley* found that independent contributions by individuals do not corrupt, and because *Bellotti's* "central principle" was that "the First Amendment does not allow political speech restrictions based on a speaker's corporate identity," 130 S. Ct. at 903, corporations cannot be banned from making the same independent expenditures as individuals, *id.* at 899-903.

That logic remains inescapable. If human beings can directly contribute *within FECA's limits* without risking *quid pro quo* corruption or its appearance, and if "the First Amendment does not allow political speech restrictions based on a speaker's corporate identity," *Citizens United*, 130 S. Ct. at 903, then corporations like Galen must be able to do the same.

Despite *Citizens United*, the Government argues that this Court is compelled by the Supreme Court's ruling in *FEC v. Beaumont* to apply § 441b in this case. The Eighth Circuit recently took the same view in *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, No. 10-3126, --- F.3d ----, 2011 WL 1833236 (8th Cir. May 16, 2011). *Swanson* involved a challenge

under *Citizens United* to a Minnesota law banning direct
corporate campaign contributions.  The Eighth Circuit read
*Beaumont* as holding that "the government could prohibit even
non-profit, advocacy corporations from making direct
contributions."  *Id.* at *10.  The *Swanson* court reasoned that
*Beaumont* is "controlling precedent" for the constitutionality of
the corporate contributions ban and that *Beaumont* must therefore
be applied, even if *Citizens United* seemed to overrule *Beaumont*
by implication.  *Id.* at *10-11.  The Eighth Circuit's reasoning
is persuasive but not controlling in this Circuit, and this
Court reaches a different conclusion for the reasons explained
below.

This Court is bound to apply controlling Supreme Court
precedent, even where later Supreme Court rulings erode that
precedent's logical underpinnings.  *Agostini v. Felton*, 521 U.S.
203, 237 (1997) ("We do not acknowledge, and we do not hold,
that other courts should conclude our more recent cases have, by
implication, overruled an earlier precedent.  We reaffirm that
if a precedent of this Court has direct application in a case,
yet appears to rest on reasons rejected in some other line of
decisions, the Court of Appeals should follow the case which
directly controls, leaving to this Court the prerogative of
overruling its own decisions.") (internal quotation marks and
alteration omitted).  In other words, a lower court cannot reach

a result that would require overruling a Supreme Court case.
Still, while there is no question that this Court must apply
directly controlling Supreme Court precedent, there *is* a
question of whether *Beaumont* "directly controls" this case.
Close examination of *Beaumont* shows that it does not.

*Beaumont* involved a First Amendment challenge by North
Carolina Right to Life, Inc. ("NCRL"), a nonprofit advocacy
corporation, against § 441b and the regulations implementing it
"*only* so far as they apply to NCRL."  539 U.S. at 150 (emphasis
added).  The Supreme Court found § 441b constitutional *as
applied to nonprofit advocacy corporations* but made only
assumptions as to its general constitutionality.  Indeed, it is
clear from *Beaumont*'s second sentence that its holding is
explicitly limited to nonprofit advocacy corporations:

> We hold that *applying the prohibition to
> nonprofit advocacy corporations* is
> consistent with the First Amendment.

Id. at 149 (emphasis added).

Describing the case's history, the Court noted that
"[t]he District Court granted summary judgment to NCRL and held
§ 441b unconstitutional *as applied to the corporation*," *id.* at
150 (emphasis added), and that "the Court of Appeals went on to
hold the ban on direct contributions likewise unconstitutional
*as applied to NCRL*," *id.* (emphasis added).

The Court then *assumed--but never held*--that the
extensive "historical prologue [behind § 441b] would discourage
any broadside attack on corporate campaign finance" (in a pre-
*Citizens United* world, of course).  Because of this historical
prologue, the Court next noted that "NCRL accordingly questions
§ 441b *only to the extent the law places nonprofit advocacy
corporations like itself* under the general ban on direct
contributions."  *Id.* at 156 (emphasis added).  The Court went on
to list a number of reasons for banning direct contributions
from nonprofit advocacy corporations, *id.* at 159-60, and to
consider whether nonprofit advocacy corporations deserve
constitutional exemption from § 441b, *id.* at 163, before
ultimately reversing the Fourth Circuit's decision below, *id.*

　　　　*Beaumont's* holding, upholding the constitutionality of
§ 441b's ban on direct contributions from nonprofit advocacy
corporations, certainly can be logically *extended* to support §
441b's ban on all corporate contributions.  "There is, however,
a difference between following a precedent and extending a
precedent."  *Jefferson Cnty. v. Acker*, 210 F.3d 1317, 1320 (11th
Cir. 2000).  "The difference, as it relates to a lower court's
duty to follow moribund Supreme Court decisions, is manifest in
the words 'which directly controls' [from *Agostini*]."  *Id.*
"[I]f the facts of a gravely wounded Supreme Court decision do
not line up closely with the facts before us--if it cannot be

8

said that decision 'directly controls' this case--then we are
free to apply the reasoning in later Supreme Court decisions to
the case at hand."  *Id.; see also, e.g.*, *Lambrix v. Singletary*,
520 U.S. 518, 529 n.3 (1997) ("While . . . two cases can be
called 'controlling authority' in the sense that the two
propositions they established . . . were among the 'givens' from
which any decision in [the later case] had to be derived, they
assuredly were not 'controlling authority' in the sense we
obviously intend: that *they compel the outcome* in [that later
case].") (emphasis added); *United States v. Acosta*, 502 F.3d 54,
60 (2d Cir. 2007) (stating that, where "neither [of two Supreme
Court cases], stands as direct precedent requiring" an outcome,
"*no* Supreme Court precedent stands in the way of [the Second
Circuit's] holding"); *United States v. Bruno*, 487 F.3d 304, 306
(5th Cir. 2007) (stating that because two Supreme Court cases
"are not direct precedents . . . [the cases] do not preclude
[the Fifth Circuit] from" its holding because "[i]n neither did
the [Supreme] Court analyze the precise question [a later case]
squarely addressed").

Beaumont's facts and holding do not compel an outcome
in this case.  Simply put, *Beaumont* expressly "h[e]ld that
applying [§ 441b] *to nonprofit advocacy corporations* is

9

consistent with the First Amendment." 539 U.S. at 149.[4]

Defendants' corporation--Galen--is not a nonprofit advocacy corporation.[5] *Beaumont* therefore did not hold that § 441b is constitutional as applied to this case and is therefore not "directly controlling" here for *Agostini* purposes.

*Beaumont* remains good law, but it does not *directly control* the issue at hand: whether the corporate contributions ban is constitutional as applied to Defendants' for-profit corporation. *Beaumont* is no different from *Citizens United* in that neither case's *holding* "directly controls" this case, though both cases' *analyses* are strongly implicated by it. *Beaumont's reasoning* can still inform this Court's analysis, but only so far as the Court can square *Beaumont* with the Supreme Court's more recent decision in *Citizens United*. And, following *Citizens United*, *Beaumont's* reasoning is no longer viable on several fronts.

---

[4] The Government agreed in Open Court that *Beaumont* was an "as applied" ruling, but argued that *Beaumont* is necessarily implicated in this case.
[5] The Government argued in Open Court that Defendants' assertion that *Beaumont* does not apply to Galen is like ConAgra Foods arguing that the Supreme Court's landmark Commerce Clause case, *Wickard v. Filburn*, 317 U.S. 111 (1942), applied only to the individual wheat farmer in that case and not to a large company like ConAgra. Among other reasons, that analogy fails in light of *Wickard's* plainly broad holding: "Even if [wheat farming] be local and though it may not be regarded as commerce, it may still, *whatever its nature*, be reached by Congress *if it exerts a substantial economic effect* on interstate commerce." *Id.* at 125 (emphasis added). This holding by its terms would apply to ConAgra, whereas *Beaumont's* holding, by its terms, excludes Galen. Indeed, had *Beaumont's* as-applied holding been closer to *Wickard's* holding, for example by addressing corporations "whatever [their] nature," it would directly control this case.

First, *Beaumont* relies significantly on *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), which the Supreme Court explicitly overruled in *Citizens United*, 130 S. Ct. at 913. Second, *Beaumont* cites Congress's concern for preventing corruption and its appearance, 539 U.S. at 154–55, a worry again foreclosed here by *Citizens United's* ruling that corporations have equal political speech rights to individuals, who can directly contribute *within FECA's limits* without risking corruption or its appearance. Third, though *Beaumont* notes that the ban protects individuals who have paid money into a corporation from having that money used to support candidates they may oppose, *id.* at 154, *Citizens United* dismisses this problem too, stating that shareholders can address it "through the procedures of corporate democracy," 130 S. Ct. at 911.

Finally, both *Beaumont* and the Government cite fears that corporations could be used to hide conduit (or "pass-through") contributions by those wishing to circumvent individual contribution limits. 539 U.S. at 155. For instance, an individual wanting to donate more money than the law allows could incorporate a number of corporations and use the corporations as fronts for her own contributions to a candidate. This sort of behavior already is illegal under the same campaign finance laws used to bring this very case: 2 U.S.C. § 441f, making it illegal to "make a contribution in the name of another

person[6]," and 18 U.S.C. § 1001, making it illegal to "make[] any

false, fictitious, or fraudulent statement or representation" to

the Government, as discussed at length in this Court's May 26,

2011 Memorandum Opinion.  *See also McConnell v. FEC*, 540 U.S.

93, 136-38 (2003).  The FEC moreover seems capable of addressing

such concerns through rules like those it already uses for

*un*incorporated entities such as partnerships and limited

liability companies ("LLCs"), which attribute their

contributions to partners' or members' individual contribution

limits.  *See* 11 C.F.R. §§ 110.1(e), (g) (regulating,

respectively, partnerships and LLCs).  Regardless, this concern

does not permit this Court to escape the logical implications of

*Citizens United*, which are clear.

        This Court has little choice between *Beaumont's* now-

"gravely wounded" reasoning and that of the case that struck the

blow: *Citizens United*.  Again, for better or worse, *Citizens

United* held that the First Amendment treats corporations and

individuals equally for purposes of political speech.  130 S.

Ct. at 913.  This leaves no logical room for an individual to be

able to donate $2,500 to a campaign while a corporation like

Galen cannot donate a cent.  Thus, *as applied here*, § 441b(a) is

unconstitutional.

---

[6] As discussed below, a "person" is defined in FECA as including a
"corporation," among other things.  *See* 2 U.S.C. § 431(11).

This finding does not, as the Government argued, "equat[e] apples and oranges"[7] by equating independent expenditures with direct contributions.  Taken seriously, *Citizens United* requires that corporations and individuals be afforded equal rights to political speech, unqualified.  130 S. Ct. at 913 ("We return to the principle established in *Buckley* and *Bellotti* that the Government may not suppress political speech on the basis of the speaker's corporate identity.").  Thus, following *Citizens United*, individuals and corporations must have equal rights to engage in *both* independent expenditures *and* direct contributions.  They must have the same rights to *both* the "apple" *and* the "orange."

To be clear, this Court is well aware of its duty to follow Supreme Court precedent, and it does not purport to overrule *Beaumont*.[8]  *Beaumont* remains good law, and the prerogative remains with the Supreme Court to overrule *Beaumont* (or to overrule or limit *Citizens United*) should it so choose.  *Agostini*, 521 U.S. at 237.  This Court moreover again recognizes that it must strive to avoid rendering constitutional rulings

---

[7] Government's Omnibus Response to Defendant's Motion to Dismiss [Dkt. 37] at 33.

[8] Indeed, although Defendants argue compellingly that the Government waived this issue by failing to argue on the motions to dismiss that *Beaumont* forecloses a constitutional challenge to § 441b as applied to this case, Defendants also acknowledge that this Court retains discretion to consider the issue.  This Court chooses to exercise that discretion here to ensure that its ruling conforms to controlling Supreme Court precedent.

except where absolutely necessary. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936).

This Court simply reads *Beaumont's* holding for what it says: "[w]e hold that applying the prohibition to nonprofit advocacy corporations is consistent with the First Amendment." 539 U.S. at 149. Galen is not a nonprofit advocacy corporation, so *Beaumont* informs but does not directly control this case. Had *Beaumont* held that "applying the prohibition to ~~nonprofit advocacy~~ corporations is consistent with the First Amendment," this Court would follow it, *despite* its logical inconsistency with the later-decided *Citizens United*. But because that is not what *Beaumont* held, the Court is left with two persuasive decisions, one more recent than the other.

It is also worth repeating something else this Court is *not* doing. Even if applied to all corporations, this Court's holding hardly gives corporations a blank check (so to speak) to directly contribute *unlimited amounts* of money to federal campaigns. Rather, corporations would be immediately subject to the same contribution limits as individuals, under 2 U.S.C. § 441a(a), which sets limits on contributions from a "person," and 2 U.S.C. § 431(11), which defines the term "person" as it is used in FECA as "includ[ing] an individual, partnership, committee, association, *corporation*, labor organization, or any other organization or group of persons." (emphasis added).

14

Meanwhile, corporations can make *unlimited* independent political expenditures because of *Citizens United*, 130 S. Ct. at 913, and can form political action committees ("PACs") to facilitate corporate political participation far beyond any personal contribution limit, *see Beaumont*, 539 U.S. at 163 (discussing PACs). In other words, as a practical matter, this Court's ruling adds a small drop to what is already a very large bucket.

## II. Conclusion

For these reasons, the Court will deny reconsideration except to clarify its May 26, 2011 ruling to state that 2 U.S.C. § 441b(a)'s flat ban on direct corporate contributions to political campaigns is unconstitutional as applied to the circumstances *of this case*, as opposed to being unconstitutional as applied to *all corporate donations*. Accordingly, Count Four and Paragraph 10(b) of Count One of the Indictment will remain dismissed.

An appropriate Order will issue.


|                      | /s/                                  |
| -------------------- | ------------------------------------ |
| June 7, 2011         | James C. Cacheris                    |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE   |